**Charles Brady SHEARER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–83–191 CR.**

Court of Appeals of Texas,
Beaumont.

Aug. 23, 1984.

Discretionary Review Refused
April 10, 1985.

Joseph C. Hawthorn, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

By indictment the Appellant was charged with intentionally and knowingly causing bodily injury to Herbert Linn Meyers by biting Meyers on the arm. In the same indictment the Appellant was charged with intentionally and knowingly causing bodily injury to Gerald Pedigo by hitting Pedigo with his hand. The trial was on the alleged assault against Meyers, the jury finding Appellant guilty. The trial court assessed punishment at 30 days in the county jail.

Sometime during the afternoon of February 18, 1983, the Appellant's wife drove to Linn Meyers' Exxon Service Station at the corner of Interstate 10 and Lucas in Beaumont to purchase fuel. Apparently she requested that leaded gasoline be pumped into the tank of her automobile which was certified for unleaded fuel only. An attendant at the station refused her request. She then proceeded home and reported this refusal to Appellant, a Beaumont police officer.

At about 8:00 o'clock P.M. or 8:30 P.M. the Appellant went to the Exxon station and engaged in a conversation with the attendant, Gerald Pedigo, and the station

owner, Linn Meyers. The evidence is conflicting from this point onward. A heated argument took place which resulted in the confrontation and altercation that resulted in the charges against the Appellant. The Appellant testified that he went to the station as a customer and not in his capacity as a police officer for the City of Beaumont. At some point during the lively and heated discussion, he did identify himself as a police officer by exhibiting a small badge. The Appellant was not wearing his correct, usual police officer's uniform. Appellant used the station's telephone to call the police dispatcher for a unit to be sent to the scene.

Frankly, the testimony and evidence of the Appellant on the one hand and Pedigo and Meyers on the other are highly contradictory and conflicting. Although the preliminary facts are much in dispute, some type of altercation or wrestling match took place. The disturbance involving Linn Meyers took place on his own property. At about the time the first phone call was made to the police station by the Appellant, he conceded that no law had been violated by Meyers except allegedly for failure of Meyers to identify himself. Meyers testified that he had identified himself and even had delivered to Appellant his business card. In the Statement of Facts we find (questions by Mrs. Vivian Bradford and answers by Charles Brady Shearer):

"Q Are you telling the jury that a citizen on his own property is required to give his identification or his name to an officer who comes there asking about a matter involving his wife?

"A That's not what I'm saying.

"Q Why was he required to give you his name?

"A Because I asked him, after he became offensive and bowed up and everything, because I wanted to know who I was dealing with so I'd at least have a name."

Later, in the Statement of Facts, we find (questions by Mrs. Vivian Bradford and answers by Charles Brady Shearer):

"Q Were you at that point trying to place him under arrest?

"A I was trying to restrain him as far as for my own personal safety, which I have that option of doing.

"Q So he was not under arrest?

"A Technically, anytime like a traffic stop or anything like that, technically, it's an arrest.

"Q What were you arresting him for?

"A Like I said, as far as—it's technically an arrest as far as when I limit his body movement.

"Q What were you arresting him for?

"A At that point, I was just holding him for my own safety.

"Q What had he done to make him required to go outside with you and have him place his hands on your car?

"A It was—I was in fear of my life.

"Q All of this is supposed on your part.

"A *From previous experience;* yes."

. . . .

"Q In fact, you never told them they were under arrest; had you, at that point?

"A I don't remember to tell you the truth.

"Q You never told them that *they were under arrest for failure to I.D.; did you?*

"A *I don't think I did.* I don't remember.

"Q And the arrest for aggravated assault on a police officer was after the fact?

"A Pardon?

"Q Your arrest—Their arrest for aggravated assault on a police officer occurred after the fact, after the fight; correct?

"A Both the arrests occurred after that, I guess. I don't know what you're saying. I don't understand.

"Q Now, Officer Shearer, *you were acting as a police officer at that station; weren't you?*

"A *Not originally, but it turned to that; yes, ma'am.*

**4**

"Q But you changed it to being a police officer; didn't you?

"A I didn't have a choice.

"Q *And as a police officer, you conduct yourself under rules and regulations concerning police conduct; don't you?*

"A *Yes, ma'am.*

"Q *You were talking about those rules and regulations earlier; correct?*

"A You have—I guess I was. I don't know. I don't remember what you're talking about.

"Q *Now, what authority did you have to go into the station and ask Meyers and Pedigo why they didn't pump regular gas in your wife's car?*

"A *I didn't have any authority. I just asked. That's when I just asked.*

"Q *Under police regulations, you're prohibited from investigating a matter in which your wife is involved; is that correct?*

"A *If it's criminal; yes.*

"Q *Investigating any matter?*

"A *As a peace officer; yes."*

. . . .

"Q Okay. *Wouldn't you agree that Gerald Pedigo and Linn Meyers were acting lawfully when they refused to pump gas into your wife's car?*

"A *That's what I said; yeah.*

"Q And under police regulations, *you're prohibited from interfering with a lawful business of another; isn't that correct?*

"A *That's true.*

"Q Isn't a police officer supposed to promote public peace; isn't that correct?

"A That's· what I was trying to do.

"Q You were trying to promote public peace on Linn Meyers' private property?

"A That's why I called the police, as anyone else would, because I didn't want any trouble." (emphasis ours).

The Appellant argues that the evidence is insufficient as a matter of law to sustain the conviction for assault because the Appellant, as a police officer, was authorized under TEX.PENAL CODE ANN., Sec. 9.51 (Vernon 1974) to use force in arresting Meyers and at the same time Meyers was prohibited by TEX.PENAL CODE ANN., Sec. 38.03 and Sec. 9.31 (Vernon's 1974) from using any force to resist that arrest regardless of whether the arrest was lawful. Appellant dogmatically argues that his actions were taken in the process of effecting an arrest and, therefore, as a matter of law, Appellant could not be guilty.

■ Firstly, it must be borne in mind that, since there were sharp conflicts and many inconsistencies in the evidence, the jury had the right to accept or reject any or all of the testimony from witnesses for either the Appellant or the State. It was also within the province of the jury to reject all of the testimony of the Appellant, himself. *Fernandez v. State,* 564 S.W.2d 771 (Tex.Crim.App.1978).

■ This record does not establish that the Appellant had the right to make an arrest as a matter of law or that he had the right to use force in making the arrest as a matter of law. TEX.PENAL CODE ANN., Sec. 9.51(a)(1) (Vernon's 1974) authorizes the peace officer to use force against another only when the actor believes the force is immediately necessary in making the arrest and then only if the actor reasonably believes the arrest is lawful.

■ One legitimate interpretation of the evidence and, indeed, a major thrust of the evidence, could have been found by the jury that the Appellant's going to the Exxon station was to investigate a personal matter for purely personal reasons and motivations; that the Appellant went there as a consumer or customer in a private capacity and not in any degree in his capacity as a patrolman or officer of the Beaumont Police Department; thereafter, that Meyers and Pedigo attempted in good faith to make a reasonable and logical explanation of what had transpired, including demonstrating and showing to the Appellant the gasoline pump where the refusal to deliver

fuel occurred; that Appellant, still acting in his private capacity as a private citizen and consumer, started the fracas. Under this record, the jury, well within its province and prerogative, could have believed and found that the Appellant did not believe that his arrest of Meyers was lawful. Therefore, TEX.PENAL CODE ANN., Sec. 9.31 and especially TEX.PENAL CODE ANN., Sec. 9.31(b)(2) (Vernon's 1974) simply do not apply. Ground of Error No. One is overruled.

■ Appellant's Ground of Error No. Two dogmatically states that this conviction is erroneous because the facts establish self-defense as a matter of law in favor of the Appellant. One version of the testimony is to the effect that the complaining witness was holding out his hand in an effort to keep the Appellant from attempting to assault the complaining witness. At this point, the Appellant grabbed the witness' hand. After this initial contact, one string or chain of the evidence tended to show that Meyers' moves and actions were defensive in nature. Meyers also testified that he tried to get away from the Appellant. A correct charge on self-defense, favorable to the Appellant, was submitted to the jury. It is obvious that the jury decided this defensive issue against the Appellant. Under this record, we hold that the finding by the jury that the accused had not acted in self-defense is amply supported and sustained by evidence of probative force. This jury finding is binding upon this intermediate appellate court. *See Gilmer v. State*, 157 Tex.Crim. 109, 246 S.W.2d 639 (1952). There was evidence to support the implied jury finding that the accused did not have a reasonable expectation of bodily harm from Meyers at the time that the accused bit the arm of the complaining witness. No attack or objection was levelled against the trial court's charge on self-defense. Ground of Error No. Two is disallowed. Judgment and sentence of the trial court is affirmed.

AFFIRMED.